USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/28/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YURY ABRUKIN

                Plaintiff,

v.

THE CITY OF NEW YORK FINANCIAL
INFORMATION SERVICES AGENCY,

                Defendant.

---

No. 17-CV-2363 (RA)

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

After his original Complaint was dismissed, Plaintiff Yury Abrukin filed a *pro se* Amended Complaint against Defendant City of New York Financial Information Services Agency (FISA), alleging unlawful discrimination on the basis of age and national origin under the ADEA and Title VII, respectively, constitutional claims under 42 U.S.C. § 1983, as well as state law claims under the New York State Human Rights Law (NYSHRL) and the New York City Human Rights Law (NYCHRL). Defendant moved to dismiss the Amended Complaint. For the reasons that follow, Defendant's motion is granted.

## Background

The Court assumes the parties' familiarity with the procedural history of this case, as well as the facts alleged in the Amended Complaint, which are construed in the light most favorable to Plaintiff. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013). While these facts are largely the same as the facts alleged in the original Complaint, which this Court dismissed in its entirety in an oral ruling on February 9, 2018, *see* Transcript of Proceedings ("Tr."), the Amended Complaint contains two new sets of allegations. First, Plaintiff makes a series of

factual allegations about the lead-up to his termination. He now alleges he was transferred to the position of Tech Scheduler in January 2014 without knowing that the new position required two years of experience or "which rights he ha[d] on this position as [a] trainee." Am. Compl. ¶ 25. This situation, in which he suggests he was set up to fail, left Plaintiff "stressed out" and "demoralized." *Id.* His group manager also allegedly commented on the slow progress of Plaintiff's work. *Id.* ¶ 26. Finally, the Amended Complaint adds new facts acknowledging an error that led to his termination. Specifically, Plaintiff alleges that when another member of the team fell ill, an unprepared substitute coworker joined him on the night shift, and this coworker "was so deeply involved in preparation that he did not have a chance to take a second look, [at] Plaintiff['s] request, when [the] error happened." *Id.* ¶ 27. Plaintiff alleges this error was harmless, but it "gave Mr. Goldin [his group manager] pretext to execute his inten[t]ions." *Id.*

Second, Plaintiff alleges that in response to an EEOC investigation, Defendant "made up the story about Plaintiff as a bad performer and [an] undisciplined employee" "in favor of [a] younger employee [of] Indian origin," in order to remove Plaintiff from his position as a Cognos developer and transfer him to a different position. *Id.* ¶ 35. Although it is not entirely clear where this allegation falls on the Amended Complaint's chronology, it appears to relate to Plaintiff's April 2013 transfer "from [Cognos] development department to production support." *Id.* ¶ 19, which is time-barred for the reasons stated in the February 9th order.

## Legal Standard

To survive Defendant's motion to dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when [it contains] factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Discussion

These new allegations do not cure the defects in Plaintiff's original Complaint, largely due to reasoning already stated in the Court's Order granting Defendant's prior motion to dismiss on February 9, 2018. With regard to Plaintiff's first allegation about his 2014 termination, the February 9th Order's discussion of time-barring under Title VII and the ADEA remains applicable, and limits the Court to considering time-barred events (i.e. events taking place before August 7, 2014) as background evidence for other viable claims. Tr. 3:7–9. Plaintiff does not appear to contest this. Pl. Memo. in Opp. at 5 ("Opp."). More fatal to Plaintiff's Amended Complaint is the same problem underlying his original Complaint—the lack of any allegations that national origin or age were the "but for" causes of his termination. *See Colon v. Trump Int'l Hotel & Tower*, No. 10-CV-4794, 2011 WL 6092299, at *4–5 (S.D.N.Y. Dec. 7, 2011); Tr. 6:8–10. While Plaintiff has alleged that his group manager used Plaintiff's error at work as "pretext to execute his inten[t]ions[,]" nothing in the additional allegations about the period preceding Plaintiff's firing gives rise to an inference of discrimination. Plaintiff has not indicated, for example, that his group manager—or anyone else—made discriminatory statements about Plaintiff's age or national origin, or treated employees that were not in one of these protected groups more favorably. Instead, Plaintiff admits that he was poorly prepared for a new position which he voluntarily accepted, *see* Am. Compl. ¶ 20, that his group manager informed him his progress was slow, *id.* ¶ 26, and that he was responsible for an error which led to his termination. *See* Opp. at 7 (acknowledging the "error which as Plaintiff admitted was made during work"); *see also* Am. Compl. ¶ 27; Tr. 6–8.

Plaintiff's second allegation, regarding his discriminatory "removal" from his position as a Cognos developer and transfer to a different position, fails for reasons already stated in this Court's February 9th Order. *See* Tr. 7:25–8:13. To briefly reiterate, Plaintiff's allegation appears to relate to his April 2013 transfer, not to the January 2014 transfer, which, as Plaintiff concedes in his opposition letter, "may not be considered as [a] separate demotion as correctly claims Defendant." *See* Opp. at 6–7. As previously noted, however, Plaintiff "agreed to this [April 2013] transfer," Am. Compl. ¶ 20, and he has not alleged that he was compelled to accept the transfer because his employer had "create[d] conditions so difficult or unpleasant that a reasonable person in [his] shoes would have been compelled to request and accept the transfer." *United States v. New York City Dep't of Educ.*, No. 16-CV-4291, 2017 WL 435940, at *8 (S.D.N.Y. Jan. 31, 2017), *report and recommendation adopted*, No. 16-CV-4291, 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017). Nor has Plaintiff alleged "that the transfer created a materially significant disadvantage" in his terms of employment. *See Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). Thus, as discussed in the February 9th Order, this transfer does not constitute an adverse employment action for Title VII and ADEA purposes.

Moreover, the Amended Complaint fails to explain how Plaintiff's transfer, even if it were materially adverse, "occurred under circumstances giving rise to an inference of discrimination." *Colon*, 2011 WL 6092299, at *4. Plaintiff alleges that an EEOC investigation found that his prior manager had "made up the story about Plaintiff as a bad performer" in order to justify transferring him so the manager could hire a "younger employee [of] Indian origin." Am. Compl. ¶ 35. Plaintiff, however, fails to support this statement with any factual allegations. *See Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 465 (S.D.N.Y. 2010) (dismissing ADEA claim where plaintiffs "merely allege[d] that [they were] over 40 years of age and were replaced by younger

4

teachers," noting that the plaintiffs "do not state who the teachers are that replaced them or their age"). Plaintiff's "investigation" of his previous manager's "strange pattern" of hiring young employees of "Indian-Asian decent [sic]," Am. Compl. ¶¶ 31–32, neither provides specific details about any person who replaced him, nor indicates that this person was "less qualified" than Plaintiff. *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015). The only other attempts Plaintiff makes at a showing of causation are the following declarations of his subjective perceptions of discrimination: "Plaintiff started to believe that his demotion was not the result of department needs," *id.* ¶ 30; "Plaintiff also realized that N. Patel has preferences of hiring employee based on national origin," *id.* ¶ 32; "Before transfer Plaintiff got strange feeling [sic] that attitude of management to him was changed." *Id.* ¶ 36. "It is well established, however, that a plaintiff's subjective belief that [he] was the victim of discrimination, no matter how strongly felt, is insufficient to satisfy the burden to plead facts that could plausibly support an inference of discrimination." *Smith v. Bronx Cmty. Coll. Ass'n*, No. 16-CV-3779, 2017 WL 727546, at *2 (S.D.N.Y. Feb. 23, 2017). Plaintiff's own opinions simply do not amount to proper allegations of unlawful discrimination.

Plaintiff has made no new allegations regarding Defendant's failure to re-hire him, so the Court refers him to its February 9th ruling for an explanation of why this claim fails. As for Plaintiff's claim of a hostile work environment, the Amended Complaint includes two interactions not present in the original Complaint. First, Plaintiff alleges a coworker from the night shift remarked after a formal announcement about Plaintiff's termination, "you are a trainee, what did they expect from you." *Id.* ¶ 25. Second, Plaintiff alleges his group manager announced work deadlines for Plaintiff with a grave "tone" and left Plaintiff on several occasions feeling "stressed," "demoralized," and under "pressure under threat of termination." Am. Compl. ¶¶ 25, 26. These

5

comments are far from what constitutes "severe or pervasive" harassment in the workplace, for the reasons stated in the February 9th Order. *See Terry v. Ashcroft*, 336 F.3d 128, 147–48 (2d Cir. 2003); Tr. 9:9–22. And even if Plaintiff had alleged severe or pervasive harassment in the workplace, his allegations do not connect this harassment to a protected characteristic. *See, e.g., Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of [a] . . . protected characteristic."). Based on the foregoing Plaintiff fails to state a claim upon which relief can be granted under Title VII or the ADEA.

Plaintiff's third cause of action, for violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, similarly fails. In its motion to dismiss, Defendant suggests that Plaintiff's inclusion of this previously withdrawn claim in the Amended Complaint was "accidental," but Plaintiff has confirmed that he fully intended to restate this claim based on alleged national origin discrimination. *See* Opp. at 4. Plaintiff has not even attempted to address the reasons set forth in this Court's February 9th ruling for why this cause of action fails, namely that 1) FISA cannot be sued under § 1983, and 2) municipal liability turns on a policy or custom leading to a constitutional injury. *See* Tr. at 11:14–21 (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)). His § 1983 claims are therefore dismissed.

Lastly, this Court declines to exercise supplemental jurisdiction over Plaintiff's discrimination claims based on the NYSHRL and the NYCHRL. A district court may, at its discretion, "decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see United Mine Workers of Am. v.*

6

*Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**Leave to Amend**

The final question is whether Plaintiff should have another opportunity to amend his complaint. "Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citation omitted). If a plaintiff has not yet had a chance to "correct deficiencies with respect to his newly asserted claim" in an amended complaint, however, he should be granted leave to amend. *Darcy v. Lippman*, No. 03-CV-6898, 2008 WL 629999, at *17 (S.D.N.Y. Mar. 10, 2008). But this is not a case where Plaintiff has added an entirely new *claim* in the Amended Complaint. There are no new claims stated in the Amended Complaint, just a handful of additional allegations. Furthermore, while "[a] pro se complaint should not be dismissed without the court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and alterations omitted), Plaintiff was granted leave to amend after having been ably represented by counsel in connection with his original Complaint and the motion to dismiss. Because he has already been given leave once, and because granting further leave is "unlikely to be productive," *see Lucente*, 310 F.3d at 258 (citation omitted), Plaintiff will not again be granted further leave to amend.

**Conclusion**

For the foregoing reasons, Plaintiff's federal claims of unlawful discrimination under Title VII, the ADEA, and 42 U.S.C. § 1983 are dismissed with prejudice. The Court declines to exercise

supplemental jurisdiction over Plaintiff's discrimination claims based on the NYSHRL and the NYCHRL.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum Opinion & Order to Plaintiff. The Clerk of Court is further directed to terminate the motion pending at docket number 29 and close this case.

SO ORDERED.

Dated: January 28, 2019
       New York, New York

Ronnie Abrams
United States District Judge